**BENTON et al. v. REYNOLDS et al.**

No. 14982.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 5, 1948.

Rehearing Denied Dec. 10, 1948.

Donald & Donald and T. B. Coffield, all of Bowie, for appellant.

Marvin F. London, of Montague, and Sanders, Scott, Saunders & Smith and Albert Smith, all of Amarillo, for appellee.

HALL, Justice.

This is an appeal from an action of the District Court of Montague County in confirming a sale of 230 acres of real estate situated in said County, with the mineral rights reserved, under Rule 770, Texas Rules of Civil Procedure.

Sheriff J. L. Jameson of said County was the duly authorized and acting receiver appointed by the court. The sale was to W. T. Reynolds for the sum of $5.50 per acre, making a total of $1265.

All parties were duly notified of the sale and date of hearing on the application for confirmation of same. Upon the confirmation hearing an "upset" bid was offered by one F. S. Reaser in the sum of $7 per acre, or a total increase of $345. After hearing testimony upon confirmation of sale the court approved its receiver's report of sale to said Reynolds and entered the following findings in said order of confirmation: "And it appearing to the Court that such sale was made pursuant to an order of the Court dated March 1, 1948, that due notice of the filing of the report of sale herein and application for confirmation of the same has been duly given to all parties to this cause, and it further appearing to the Court from such report and also from the evidence that said property was sold to W. T. Reynolds, of Forestburg, Montague County, Texas, for the sum of $1265.00 cash, that such sum is a fair and reasonable and adequate price for said real estate and the best obtainable by said Receiver prior to his report of sale, and that said sale was in all things fairly made and in conformity with law and with the order of this Court. * * *"

From such order appellant Joe Benton, owning 12/24ths of the surface rights; Willie Belle Bogard et vir, John C. Bogard, Jr., owning 3/24ths, predicate this appeal upon the propositions, (1) the court erred in confirming the sale when it had before it an increased offer of $345; and (2) the trial court erred in confirming the sale upon sealed bids when the order of sale provided such real estate be sold at private sale.

Three witnesses, namely, C. E. Dunn, Paul Orrell and Lee Kuykendall, who lived in the vicinity of the land and had known it for many years, testified that its value would not exceed $5.50 per acre, that they considered such bid a good and fair price for said land. They were the only disinterested witnesses who testified as to the value of the land who were not connected in any way with the record of the case.

Two attorneys representing contestants testified that the land was worth from $8 to $10 per acre.

Mr. Reaser, the upset bidder, testified that in his opinion the land was worth $7 per acre and was willing to pay that for it. He tendered into court the full amount at that price, which tender the court refused to accept. Mr. Reaser admitted that he was getting part of the money to pay for the land from Mr. Benton owner of one-half of the surface rights.

The bidder, W. T. Reynolds, testified that a few days before the sale Benton came by his place looking for him and that he finally saw him in Nocona, Texas, at which time Benton informed Reynolds that his partner Woods wanted to see him; that Woods inquired of Reynolds as to how much Reynolds was going to bid on the property; Woods informed Reynolds that he and Mr. Benton were also interested in bidding on the property.

The record further shows that Mr. Reaser knew of the sale before it was made to Mr. Reynolds. The receiver had been unable to make a private sale and he conceived the idea of selling it by sealed bids after advertising same by publication in all the newspapers in the county, and in response thereto he received two bids, one for $5.00 an acre from Mr. Woods and one for $5.50 from Mr. Reynolds. He sold the property, subject to the order of the court, to Mr. Reynolds, the highest bidder. The receiver sent all parties and attorneys a copy of the notice being published and there was no objection to the way and

manner in which the sale was made by closed bids from any of the parties.

The question which presents itself before us is: Did the court abuse his discretion in refusing the upset bid received before the confirmation of sale, under the facts?

Since it is not statutory that a court shall re-open bidding upon the hearing for confirmation, we must rely upon the general rules of judicial sales for our guidance. Rule 777 provides that the same rules of pleading, practice and evidence which govern in other civil actions shall govern in suits for partition when not in conflict with the provisions of the partition statutes.

Most of the law on the question pertains to bidding at public sales as stated in 50 C.J.S., § 22, page 606, under Judicial Sales: "In the absence of statutory authority, however, ordinarily a bidder may not put in an upset bid."

Page 612, § 25, of the same text provides: "Confirmation is the formal expression of the judicial sanction of the sale by which the court makes the sale its own, and an order of confirmation is a judicial, and not a ministerial, act."

Page 617, § 28, of said text says: "While it is ordinarily the duty of the court where a sale was fairly made and in conformity with the decree to ratify such sale, the courts are not compelled to confirm because the sale has been so made; and the rule is well settled that, where there is a question whether the sale should be confirmed, its determination is a matter within the sound equitable discretion of the court, even where, in jurisdictions where the opening of the bidding is allowed, an advance bid has been made. * * * While the court's discretion may be exercised in the interest of justice and on grounds which would be insufficient to confer on any party an absolute legal right to a resale, the discretion is a sound judicial discretion and, while it is broad, it must not be exercised arbitrarily or capriciously, but reasonably and in accordance with established legal principles. The discretion must be exercised with regard to the rights of all parties, including the purchaser, and the circumstances of the particular case; and in the exercise of its discretion the court must have due regard for the permanency and stability sales."

Page 620, § 28, same text, holds in effect that the inadequacy of price may warrant refusal to confirm a judicial sale only in circumstances where it is so gross as to shock the conscience or is coupled with irregularities or circumstances of unfairness or fraud and that an advance bid in the absence of such infirmities will not be allowed as a competitive bid; inadequacy of price, however, will have a greater influence toward inducing a court to disapprove a judicial sale where the objection is urged in opposition to confirmation (as was in this case) than where it is urged as a ground for setting aside the sale after confirmation.

It has been held where the sale is a private one, slight inadequacy and a reasonable expectation of a better price have been held sufficient to justify the setting aside of the sale. Page 680, § 59, same text.

Page 682, § 61, Advance on Bid, same text: "As a general rule, after a judicial sale has been completed, the court will not set it aside to allow a person to offer a larger price than that for which the property was orginally sold." However, it states that under certain circumstances the sale can be set aside for an additional price.

Page 684, § 61, same text: "It has been said, however, that one who was a bidder at the sale by himself or by an agent, or was present and had the opportunity to bid, will not, as a general rule, be permitted to put in an upset bid; * * *."

There is an exhaustive treatise on the subject in Siekert v. Soester, 144 Neb. 321, 13 N.W.2d 139, 152 A.L.R. page 530, wherein there are three doctrines advanced affecting the receipt of a higher bid before confirmation of a judicial sale, towit: (1) that confirmation will be refused on receipt of higher bid; (2) that higher bid is not sufficient ground for refusal of confirmation; and (3) that the entire matter of confirmation rests in the sound discretion of the court; under each of these doctrines are cited cases relative to re-

opening bids before confirmation. Said text places Texas under the second doctrine, to-wit: that a higher bid is not sufficient ground for refusal of confirmation by citing the case of Morrow v. De Vitt, Tex. Civ.App., 160 S.W.2d 977. The chief reason advanced by the courts for refusing to open the bids is that to do so would discourage bidding at judicial sales. According to the text this doctrine has been adopted by a majority of the American jurisdictions. The rule seems to be that before the sale should be set aside upon confirmation the price must be so low as to raise a presumption of legal fraud.

The facts in the Texas case of Morrow v. De Vitt, supra, reveal that the Court of Civil Appeals reversed the trial court wherein it refused to approve the original sale made by the receiver of two oil and gas leases after other bids had been made and before the confirmation even though such upset bids were an enhancement in price ranging from $25,000 to a probable $100,000 cash bonus. The court in that case adopted the doctrine as laid down in 53 C.J. 214, paragraph 347, to the effect that mere inadequacy of price, where not such as to be unconscionable or to work serious injustice, will not cause confirmation to be denied, nor will an offer, made subsequent to the sale by another than the purchaser, of a higher price for the property, except where the bid or offer has been accepted by the receiver expressly subject to the condition that no higher bid should be received.

Appellants cite the case of James v. Nease, Tex.Civ.App., 69 S.W. 110, 111, writ dismissed, for a reversal of this case. A careful reading of same reveals that a probate court confirmed an executor's sale of property for a cash offer of $35,800; the district court confirmed said sale upon a trial de novo upon the following testimony pertaining to the fair market value of said property: "Three witnesses for appellant fix the value of the property at from $45,000 to $50,000, one at $40,000, the appellant at $45,000, and D. R. Fant at

$38,000. Five witnesses for appellee fix it at from $35,000 to $40,000 * * *, one at $35,000, and another at from $30,000 to $35,000." While we find the opinion reversing the case on the legal assumption that the property did not bring a fair market price, yet we are at a loss to understand how the Court of Civil Appeals reached such conclusion without passing upon the credibility of the witnesses and the weight to be give their testimony, which is the prerogative of the trial court. While we are not to decide the facts in that case here, yet we do not consider its holding stare decisis upon this court because we do not consider the dismissal of the writ by the Supreme Court as that court's sanction of the opinion of the Court of Civil Appeals, since we do not know upon what grounds the writ was granted nor why it was dismissed.

The opinion itself recites in substance that it has the right to pass upon the credibility of the testimony in the following language: "When the issue is to be determined, it must appear from the evidence that the property was purchased at its fair market value. This must be shown to the satisfaction of each court before whom the question is brought to the court of appeals, as well as the trial court. If there is a failure of such proof, no right has been acquired by the purchaser, * * *."

We find in the case at bar the court did not abuse its judicial discretion in refusing to re-open the bid for the sum of $345 advancement in price under the circumstances in this case, because the record shows that the receiver had discussed the sale of this property to most of the interested parties and their attorneys many times, trying to persuade them to bid on the property; that all of them were of age and that the testimony from the disinterested witnesses reveals that the sale approved by the court was based upon a fair and reasonable market value.

The judgment of the trial court is affirmed.